IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

STACY BRADY, et al.,            )
                                )
        Plaintiffs,              )
                                )
                                )
vs.                             ) CASE NO. 2:08-0058
                                ) JUDGE ECHOLS/KNOWLES
                                )
                                ) JURY DEMAND
LTD PARTS, INCORPORATED, et al., )
                                )
        Defendants.             )

## ORDER

This matter is before the Court upon Defendants' "Renewed Motion for Protective Order With Respect to Plaintiffs' 30(b)(6) Deposition Notice." Docket No. 76. Defendants have filed a supporting Memorandum of Law. Docket No. 77.

Plaintiffs have filed a Response to the Motion (Docket No. 81), and a "Supplemental Response" containing a rough draft of certain pages of a Deposition of Defendant Sherry Vinson taken September 16, 2009. (Docket No. 82).

In their First Amended Complaint, Plaintiffs essentially allege that they were employed at the Visteon plant in White County, Tennessee, "until each of them were [*sic*] terminated by the defendants on or about January 31, 2008." Docket No. 33, p. 5. The Complaint and Amended Complaint allege that Plaintiffs were terminated for exercising their rights under the Family and Medical Leave Act of 1993 (29 U.S.C. § 2601, *et seq.*), and/or their rights under the workers' compensation laws of the state of Tennessee. The Amended Complaint further alleges that Defendants Visteon Corporation and LTD Parts, Inc., owned and operated the Visteon plant

through and including approximately January 31, 2008, the date on which Plaintiffs were terminated. The Amended Complaint further avers that Defendant Centrum Equities XV, LLC, and others formed Defendant Centrum Reman, LLC, for the purpose of ultimately taking title to the assets and operations of all or part of the business of Visteon on or about January 31, 2008.

Plaintiffs have previously served a Notice of Deposition, pursuant to Fed. R. Civ. P. 30(b)(6) upon Defendants Centrum Reman, LLC, and LTD Parts, Inc. Docket No. 62. Defendants seek a Protective Order with regard to certain provisions of the Deposition Notice. Specifically, Defendants object to Topic Nos. 8, 11, and 13, because they are "overly broad and not reasonably calculated to lead to the discovery of admissible evidence, because they seek information about certain employment practices in place *after January 31, 2008*." Docket No. 77, p. 4 (emphasis in original). These topic numbers state as follows:

> 8. Company policies, procedures and handbooks in place at all times from and after November 1, 2007, through the current date.
>
> . . .
>
> 11. For the period from January 1, 2006 through and the current date [*sic*], the FMLA leave taken by each of the employees in the Sparta facility, including the number of hours per annum, and broken down or separated by regular or block leave, intermittent leave and further broken down or separated by employee and for family member taking leave.
>
> . . .
>
> 13. For all hourly employees for the time period from January 1, 2006 through the current date, all oral or written discipline, and the basis for each act of discipline.

Docket No. 62.

Defendants also object to producing documents at the deposition, as requested in Topic

Nos. 12, 22, and the unnumbered paragraph at the end of the Notice, that have already been produced in response to previous requests for production of documents submitted by Plaintiffs.

Fed. R. Civ. P. 26(c), which governs Protective Orders, provides in relevant part, "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." Additionally, Fed. R. Civ. P. 26(b)(1) provides in part, "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Finally, Fed. R. Civ. P. 26(b)(2)(C)(ii) provides that the court must limit the frequency or extent of discovery otherwise allowed if it determines that, "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action . . . ."

With regard to the scope of discovery under Rule 26(b)(1), that provision was significantly amended in 2000. *See* Advisory Committee Notes to 2000 Amendment to Rule 26(b)(1). Under the prior version of the Rule, parties could obtain discovery regarding matters that were relevant to the subject matter of the action. The 2000 Amendments, however, provide that parties may obtain discovery only of material that is "relevant to any party's claim or defense," without a Court order. The Advisory Committee Notes indicate that a purpose of the referenced Amendment was to narrow "the scope of discovery as a means of reducing litigation expense without interfering with fair case resolutions."

Defendants' argument is very simple. Defendants state that any employment decisions with regard to Plaintiffs occurred prior to January 31, 2008. Defendants argue that discovery

3

with regard to employment decisions made after January 31, 2008, concerning employees other than Plaintiffs, is not reasonably calculated to lead to the discovery of admissible evidence. *See Konstantinov v. Findlay Ford Lincoln Mercury,* 2008 WL 896018,*2 (E.D. Mich. April l, 2008) (*citing* Advisory Committee Notes, 2000 Amendments to Fed. R. Civ. P. 26). Additionally, "When the relevancy of propounded discovery is not openly apparent, the proponent of the discovery requests has the burden to evidence that the discovery is relevant." *ATM Exchange, Inc. v. Visa Intern. Service Ass'n*, 2007 WL 1674230, *2 (S.D. Ohio June 7, 2007) (citation omitted).

Plaintiffs make the general argument that the purpose of the Rule 30(b)(6) deposition in this case involves "the pretext aspect of this case in a reduction-in-force . . . ." The remainder of Plaintiffs' arguments will be discussed with regard to each individual topic below.

Topic No. 8

Plaintiffs' argument is more difficult to understand than the simple argument made by Defendants. Plaintiffs quote from language that they proposed be included in the Joint Discovery Dispute Statement as follows:

> We agree to limit the request to employment, harassment, employee benefit and employee/line production requirement including quotas per hour, day and week and quality. This is necessary because nearly all of the plaintiffs were terminated and not rehired due to productivity issues. In particular, Mike Allen stated that Marcia Denton had a "very low quality of work," Kathy Frasier had"very poor quality work," Ann Sullivan and "low productivity," and Stacy Thorne had "low productivity." Doug Randolph stated that Arnee Milton had "constant issues affecting production," Jeanette Champion has [*sic*] "low productivity," and Ann Sullivan had "low productivity." Sherry Vinson stated that Marcia Denten was "lazy" and had "low productivity," and Stacy Thorne was "lazy."

4

> Nearly all decision makers testified that there way [*sic*] no way to measure individual productivity of these plaintiffs except by watching them. We need all current policies to determine if there is any policy, rules, regulations, bonuses etc. relative to employee production which would belie the foregoing testimony.
>
> "Racial" was listed as a reason by the decision makers as terminating and not rehiring the following plaintiffs: Ronald Brandt (former plaintiff), San Juana Young, Jeanette Champion, Wayne Jackson, Donna Poling (former plaintiff), Ann Sullivan, and Barbara Wilson. We need all policies to see if there is discipline steps for employees who are guilty of violating defendants' harassment policies and if those policies were adhered to by defendants.
>
> We also need any pass through policies from major auto makers to LTD (OFCCP) relative harassment.
>
> All of the foregoing pertain to the issue of pretext.

Docket No. 81, p. 7.

Plaintiffs conclude by stating that their "arguments and facts introduced are self-explanatory, and plaintiffs submit these justify the right to inquire into these policies existing both before and after the change in ownership that occurred on February 1, 2008." *Id.*

With all due respect, Plaintiffs' arguments and facts are not "self-explanatory." Plaintiffs have not shown how policies, procedures and handbooks from the period of time after January 31, 2008, are relevant to any parties' claims or defenses.

<u>Topic No. 11</u>

With regard to Topic No. 11, Plaintiffs' argument is again difficult to understand. Plaintiffs argue that sworn testimony has indicated that newly-hired employees after the asset sale on January 31, 2008, were under the impression that they needed 1,250 hours with the new company before qualifying for FMLA leave and that no FMLA was approved by the company in

5

the first 6 months following the transition of ownership. Plaintiffs state, "Plaintiffs submit that such a posture by the company is relevant on the question of pretext." Docket No. 8, p. 8. Plaintiffs further argue that it should be easy for the company to generate such information. Plaintiffs also state:

> Plaintiffs submit this information is or may be relevant in the context that both the company [*sic*] took a posture denying all FMLA leave after February 1, 2008, and in that the retained employees of the new companies, less the plaintiffs and their intermittent FMLA use, showed a significant reduction in FMLA hours used. Plaintiffs submit that from this a jury could infer that a substantial motivation in these terminations was really the plaintiffs' intermittent FMLA use and its disruption on the assembly line process.

Docket No. 81, p. 8-9.

Once again, the Court simply does not see how what some Defendants may have done after Plaintiffs were terminated is relevant to any of the parties' claims or defenses in this action.

### Topic No. 13

With regard to Topic No. 13, Defendants raise the same temporal objection, and they further argue that it is overly broad and unduly burdensome. Defendants particularly appear to object to testimony concerning "oral" discipline. Defendants further argue that the response of information would not reasonably be calculated to lead to the discovery of admissible evidence.

In response, Plaintiffs argue:

> During the depositions of decision makers, they testified that they were not allowed to discipline any employees after the exit of the Union and before January 31, 2008. This is not true because we have at least 2 written warnings to former plaintiffs during this time period regarding productivity. In order to prove pretext, we need to see all employees' discipline files to see if there were written warnings for lack of productivity (see above), laziness (see above), disrespect to supervisors (San Juana Young), racial

6

> harassment (Jeanette Champion, Wayne Jackson, Ann Sullivan, San Juana Young and Barbara Wilson), disruptive behavior (Jeanette Champion, Kathy Frasier, Wayne Jackson, Diane Sawyer, Anne Sullivan and San Juana Young) and unable to work in a team environment (Arnee Milton and Kathy Frasier). We can prove pretext if there were LTD employees, who were guilty of the foregoing infractions and disciplined for it, but retained instead of our plaintiffs who did not suffer record of discipline and exercised their FMLA rights and/or filed worker's compensation claims.
>
> In their statement concerning paragraph 13 of the Rule 30(b)(6), Defendants take the position that they did not review or use employee written disciplinary records as a basis to determine who would and would not be retained. Plaintiffs take the position that defendants cannot avoid the impact of actual employee discipline on these retention decisions by saying that they used their collective memories of incidents of discipline as a record to judge whether or not to retain an employee. In other words, the defendants want to rely on their collective memories rather than their actual written records of discipline to justify the firing of the plaintiffs in this case. Plaintiffs content [*sic*] these other employee disciplinary records are relevant both for use in impeachment, and to prove pretext.

Docket No. 81, p. 10-11.

The Court agrees with Defendants that any such information after January 31, 2008, is not relevant to any of the parties' claims or defenses. The information from the time period January 1, 2006, through January 31, 2008, however, could certainly be relevant regarding the issue of pretext. The Court agrees that the request for "all oral . . . discipline" is over broad and burdensome. Plaintiffs argue that certain documents collectively show that "verbal warnings at the company were in fact documented." Thus, to the extent that oral discipline is "documented" (which seems to be a contradiction in terms), it is an appropriate subject for the Rule 30(b)(6) deposition.

<u>Topic Nos. 12, 22 and unnumbered paragrpah</u>

7

Defendants also raise an objection to Topic Nos. 12, 22 and the unnumbered paragraph at the end of the Notice, all of which, Defendants argue, "serve as requests for production of documents, not as actual topics of inquiry." Defendants state that they do not object to Plaintiffs' efforts to seek testimony regarding such documents, but that they do object to the extent that Defendants may be required to produce at the deposition documents that they have previously produced in response to earlier requests for production of documents under Rule 34. The Court agrees that this is unduly burdensome. Additionally, as provided in Rule 26(b)(2)(C)(ii), Plaintiff has had ample opportunity to obtain those documents by prior discovery in this action.

For the foregoing reasons, Defendants' Motion for Protective Order is GRANTED, as discussed above, with regard to Topic Nos. 8, 11, 12, 22 and the unnumbered paragraph at the end of the Notice. The Motion is granted in part and denied in part with regard to Topic No. 13.

IT IS SO ORDERED.

E. Clifton Knowles
United States Magistrate Judge