**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION AT COOKEVILLE**

| | | |
|---|---|---|
| STACY BRADY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 2:08-cv-0058 |
| | ) | |
| vs. | ) | JUDGE ECHOLS |
| | ) | MAGISTRATE JUDGE KNOWLES |
| | ) | |
| | ) | JURY DEMAND |
| LTD PARTS, INCORPORATED, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants Centrum Reman, LLC; LTD Parts, Incorporated; Centrum Equities XV, LLC; Visteon Corporation; Terry Howard and Sherry Vinson (collectively "defendants"), offer the following Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment.

**Material Facts Applicable to the Claims of All Plaintiffs**

The following undisputed material facts are applicable to the claims made by all of the plaintiffs:

1.     Over the years, Visteon would not allow local LTD management to discipline hourly employees who were union members or who served in union leadership positions.  (Allen Dep. at 24; Evans Dep. at 45-48; Howard Dep. at 25-26; Randolph Dep. at 42-43; Vinson Dep. at 26-27, 29-30, 168-69, 173-74, 196-99, 213-23, 230-31, 248-57, 276-81, 288-93, 300, 303; Vinson Dec., ¶ 5).

**RESPONSE:**

2.      Plaintiff Jackson's term as union president lasted from March 2005 to October 2007, when the union was decertified in a formal election.  (Jackson Dep. at 82-84, 189-190).

**RESPONSE:**

3.      During Plaintiff Jackson's term as union president, there were numerous confrontations between Jackson and local LTD management, many of which are documented. (Jackson Dep. at 77-130, 133-36, 137-170, 177-185, 187-88, Exbs. 4-12, 14, 16, 17-24, 27-28, 30; Randolph Dep. at 81-84; Vinson Dep. at 248).

**RESPONSE:**

4.      At one point, LTD tried to terminate Jackson's employment for disruptive misconduct, but Visteon overruled the decision and ordered local LTD management to reinstate him.  (Jackson Dep. at 80-81, 137-157, Exbs. 16-20; Vinson Dep. at 32).

**RESPONSE:**

5.      Visteon directed local LTD management to purge Jackson's personnel file of negative information.  (Vinson Dep. at 250-51).

**RESPONSE:**

6.      In early 2006, Visteon launched an initiative to reduce the amount of absenteeism and lost time at the LTD plant.  (Howard Dep. at 47-57, 61-66, Plaintiffs' Exbs. 1-3, 5; Jackson Dep. at 170-75, Exb. 25; Marcum Dep. at 21-25, Plaintiffs' Exb. 10; Vinson Dep. at 75-80, 82-88, 99-101).

**RESPONSE:**

N BHB 736113 v1
2138171-000277 11/12/2009

7.     By 2007, the absenteeism and lost time statistics for the LTD plant had improved and Visteon considered the problems solved.  (Howard Dep. at 48, 65-66; Marcum Dep. at 46-47; Vinson Dec., ¶ 6).

**RESPONSE:**

8.     Local LTD management's approach to administering FMLA leave had always been pro-employee.  (Marcum Dep. at 17-18, 34; Vinson Dec., ¶ 7).

**RESPONSE:**

9.     Managers at the plant knew from their FMLA training that employees were entitled to FMLA when they qualified for it and that it was illegal to count FMLA leave against employees.  (Allen Dep. at 21-22, 35; Howard Dep. at 36-37, 54-55; Randolph Dep. at 65-66; Vinson Dep. at 147).

**RESPONSE:**

10.     LTD used a consultant at relevant times to assist them with FMLA questions. (Marcum Dep. at 32-35; Vinson Dec., ¶ 63-64).

**RESPONSE:**

11.     When deposed, no plaintiff could recall a single time in which they requested FMLA leave and were ultimately denied or in which Ms. Vinson or any other member of local LTD management expressed hostility about FMLA leave.  (Champion Dep. at 73; Denton Dep. at 21; Jackson Dep. at 173-177, 194-96; Milton Dep. at 72; Sawyer Dep. at 47; Sullivan Dep. at 90; Thorne Dep. at 74; Wilson Dep. at 56).

**RESPONSE:**

N BHB 736113 v1
2138171-000277 11/12/2009

12.     In 2007, hourly employees at the LTD plant were trying to decertify the union, and their efforts paid off in late October 2007 when the union was decertified in a vote that was not even close.  (Jackson Dep. at 190).

**RESPONSE:**

13.     Employees at the LTD plant had been trying since 2006 to decertify the union, but their initial effort was unsuccessful because they missed the deadline to petition the NLRB for a decertification vote.  (Vinson Dec., ¶ 8).

**RESPONSE:**

14.     Visteon was even more insistent in 2007 that local LTD management take a "hands off" approach to discipline of union members.  (Vinson Dep. at 205-07).

**RESPONSE:**

15.     After October 2007, Visteon reaffirmed its commitment to their "hands off" approach to discipline of union members and local LTD management were even forbidden from taking disciplinary action against any employees at the LTD plant, whether or not they were former union members.  (Howard Dep. at 27; Vinson Dep. at 25-26, 29, 92-93; Vinson Dec., ¶ 9).

**RESPONSE:**

16.     In November 2007, Visteon and Centrum Equities reached an agreement in principle on the sale of Visteon's aftermarket auto parts operations.  (Brown Dep. at 22).

**RESPONSE:**

17.     The deal included the LTD plant, a plant in Mexico, and facilities in Buffalo, New York and Detroit, Michigan.  (Brown Dep. at 22-25).

**RESPONSE:**

18.     The goal was to close the deal by December 31, 2007.  (Howard Dep. at 18-19).

**RESPONSE:**

19.     One of Centrum Equities' immediate business objectives as new owner of the LTD plant was to reduce operating costs.  (Brown Dep. at 26-31).

**RESPONSE:**

20.     One short term method of achieving the goal of reducing operating costs was to reduce the number of employees at the LTD plant.  (Brown Dep. at 28, 30; Howard Dep. at 20-22; Randolph Dep. at 28).

**RESPONSE:**

21.     Roger Brown of Centrum Equities did not give Terry Howard any instructions on who to terminate or which criteria to use in the selection process; he simply delegated the task to Howard, with the instruction to reduce the total number of workers at the plant.  (Brown Dep. at 28-31, 39; Howard Dep. at 20-21, 28).

**RESPONSE:**

22.     Workforce reductions, were not limited to the LTD plant; and after the deal closed, Centrum Equities closed the Buffalo, New York facility completely and reduced the work force at the Mexican plant.  (Brown Dep. at 24-26).

**RESPONSE:**

23.     A longer term method of reducing operating costs that Centrum Equities would use was teaching LTD management how to "flex" the plant's workforce by increasing their reliance on temporary labor.  (Brown Dep. at 28, 31, 36-37).

**RESPONSE:**

N BHB 736113 v1
2138171-000277 11/12/2009

24.     Mr. Howard and Ms. Vinson formed a small committee of LTD managers to decide which employees would not be rehired when Centrum bought the LTD plant. (Howard Dep. at 29-31; Randolph Dep. at 29, 53-54; Vinson Dep. at 141-44).

**RESPONSE:**

25.     The committee consisted of Ms. Vinson and production managers Doug Randolph and Mike Allen. (Howard Dep. at 30-31, 81-82; Vinson Dep. at 144).

**RESPONSE:**

26.     Each decision-maker used a spreadsheet to "score" the employees at the plant based on their independent judgment as to the each employee's productivity. (Allen Dep. at 19-44, Plaintiffs' Exb. 6; Randolph Dep. at 29-31, 34-37, 45-70, 74-91, Plaintiff's Exb. 7; Vinson Dep. at 98-99, 106-133, 145-49, 160-85, 195-305, Plaintiffs' Exb. 8).

**RESPONSE:**

27.     Each decision-maker prepared their scoring spreadsheet independently, the scores were tabulated, and a final list of 31 employees who would not be hired to work at the Centrum-owned LTD plant was created. (*Id.*; Plaintiffs' Exb. 12).

**RESPONSE:**

28.     The scoring process was completed on or about December 6, 2007, because the goal was to close the acquisition by year end. (Allen Dep. at 35-36; Howard Dep. at 41-42; Vinson Dep. at 65-66, 110).

**RESPONSE:**

29.     The employee scoring was not reconsidered between the time the spreadsheets were completed and when the deal finally closed on January 31, 2008, and so the scoring

N BHB 736113 v1
2138171-000277 11/12/2009

committee did not factor into their decisions any events which happened after the first week of December 2007. (Vinson Dep. at 65-73).

**RESPONSE:**

30.     There is no evidence that anyone besides Howard, Allen Randolph and Ms. Vinson was involved in the scoring process. (Allen Dep. at 19, 31-33; Randolph Dep. at 74-75; Vinson Dep. at 106-07).

**RESPONSE:**

31.     No one from Visteon was involved in the decision-making process, and Visteon was not advised of the termination decisions until a list of the employees who would not be hired at the Centrum-owned plant was e-mailed to Visteon for inclusion in the closing documents. (Vinson Dep. at 71, 139-41, Plaintiffs' Exb. 21).

**RESPONSE:**

32.     The committee members did not consider factors such as whether the employees in question had filed workers' compensation claims or had taken FMLA leave. (Allen Dep. at 19-44, Plaintiffs' Exb. 6; Randolph Dep. at 29-31, 34-37, 45-70, 74-91, Plaintiff's Exb. 7; Vinson Dep. at 98-99, 106-133, 145-49, 160-85, 195-305, Plaintiffs' Exb. 8).

**RESPONSE:**

33.     Each committee member scored each employee based on their productivity when working at the LTD plant. (Allen Dep. at 19-44, Plaintiffs' Exb. 6; Randolph Dep. at 29-31, 34-37, 45-70, 74-91, Plaintiff's Exb. 7; Vinson Dep. at 98-99, 106-133, 145-49, 160-85, 195-305, Plaintiffs' Exb. 8).

**RESPONSE:**

34. The employees who received the lowest scores on Ms. Vinson's spreadsheet were former union members who she felt that she was finally able to discipline. (Vinson Dep. at 205-06).

**RESPONSE:**

35. This factor applied to at least 16 of the 31 people who were terminated, including 8 current plaintiffs (Champion, Jackson, Milton, Sawyer, Sullivan, Thorne, Wilson, and Young) and 7 former plaintiffs (Brady, Brandt, Brock, Dodson, Poling, Reeder, Sparks, Wood). (Vinson Dep. at 205-39; Vinson Dec., ¶ 21).

**RESPONSE:**

36. The acquisition closed on January 31, 2008. (First Amended Complaint ¶ 23).

**RESPONSE:**

37. The 31 employees on the list developed by the scoring committee were advised on January 31, 2008 that they would not be rehired, and they received separation notices stating that they were terminated due to "sale of the company." (Vinson Dec., ¶ 10, Exb. A).

**RESPONSE:**

38. Almost all employees at the plant took FMLA leave at some point during their tenure. (Vinson Dec. ¶ 20).

**RESPONSE:**

39. During the relevant time period, as defined by the plaintiffs, 28 employees took FMLA leave; and of those 28 employees, 16 were hired to work at the Centrum-owned plant. (Vinson Dec. ¶ 20).

**RESPONSE:**

8

40.     On October 15, 2007, the Visteon-owned LTD plant made its last request for temporary employees for the year, and it did not make any more requests through January 31, 2007.  (Ragland Dep. at 48-49, Exb. 7; Vinson Dec. ¶¶ 26, 28).

**RESPONSE:**

41.     In the months leading up to Visteon's sale of the LTD plant to Centrum Equities, LTD reduced its number of temporary employees by as many as 33, such that only approximately 15 temporary employees were still employed at the LTD plant as of January 31, 2008.  (Ragland Dep. at 48-49, Exb. 7; Vinson Dep. at 42-46).

**RESPONSE:**

42.     Plaintiffs Sullivan and Young also filed an unfair labor practice charge with the NLRB, in which they stated, under oath, that Defendants LTD and Centrum Equities terminated them in part due to their union activities.  (*See* Exb. A to Appendix of Material Documents in Support of Motion for Summary Judgment).

**RESPONSE:**

**Jeanette Champion**

The following undisputed facts are material to Ms. Champion's claims:

43.     Jeanette Champion had one worker's compensation claim while at LTD, but she does not think that it was taken into account in the decision to terminate her.  (Champion Dep. at 70-71).

**RESPONSE:**

44.     Ms. Champion was never denied FMLA leave that she requested.  (Champion Dep. at 73).

**RESPONSE:**

9

45.     Ms Champion was never prevented from taking FMLA leave by LTD and she was never disciplined for taking FMLA leave. (Champion Dep. at 73).

**RESPONSE:**

46.     Ms. Champion admitted that she did not know if her FMLA leave was related to her termination or not. (Champion Dep. at 74).

**RESPONSE:**

47.     Ms. Champion is not aware of any documents connecting her FMLA leave to her termination. (Champion Dep. at 74).

**RESPONSE:**

48.     Ms. Champion is not aware of any of any statements by LTD management that connect her termination with her FMLA leave.  (Champion Dep. at 74).

**RESPONSE:**

49.     Ms. Champion does not recall anyone in LTD management telling her that that she used too much FMLA leave.  (Champion Dep. at 74).

**RESPONSE:**

50.     When asked why she was terminated when she had used less FMLA leave than other employees who were retained, Ms. Champion responded that "some people were treated differently than others," but acknowledged that the differing treatment was not based on FMLA leave.  (Champion Dep. at 77-78).

**RESPONSE:**

51.     Ms. Champion is not aware of any evidence that FMLA leave was considered in the decisionmaking process.  (Champion Dep. at 78).

**RESPONSE:**

N BHB 736113 v1
2138171-000277 11/12/2009

52. Ms. Champion has no knowledge of a conspiracy between Visteon and LTD. (Champion Dep. at 92).

**RESPONSE:**

## Marcia Denton

The following undisputed facts are material to Ms. Denton's claims:

53. Ms. Denton never filed a worker's compensation claim while at LTD, and she is not claiming that she was terminated because of a worker's compensation claim. (Denton Dep. at 21).

**RESPONSE:**

54. Ms. Denton was never denied FMLA leave that she requested. (Denton Dep. at 21).

**RESPONSE:**

55. When Ms. Denton requested FMLA leave she went to Doug Randolph or George Evans, and neither ever made comments indicating they were upset with her for taking FMLA leave. (Denton Dep. at 22).

**RESPONSE:**

56. Nobody in LTD management ever said anything negative to Ms. Denton about her use of FMLA leave. (Denton Dep. at 23).

**RESPONSE:**

57. Nobody in LTD management said anything negative to Ms. Denton about FMLA leave in general. (Denton Dep., p 24).

**RESPONSE:**

N BHB 736113 v1
2138171-000277 11/12/2009

58.     Ms. Denton is not aware of any documents that would connect her termination and her FMLA leave.  (Denton Dep. at 23-24).

**RESPONSE:**

59.     Ms Denton has no personal knowledge that her FMLA leave was part of the reason she was terminated.  (Denton Dep. at 24).

**RESPONSE:**

60.     Ms. Denton admits that she is just assuming that FMLA leave played a part in her termination.  (Denton Dep. at 24).

**RESPONSE:**

61.     Ms. Denton was never disciplined for taking FMLA leave.  (Denton Dep. at 25).

**RESPONSE:**

62.     Ms. Denton does not know why employees who took more FMLA leave in 2007 and 2008 were retained and she was terminated.  (Denton Dep. at 27).

**RESPONSE:**

63.     Ms. Denton has no knowledge of a conspiracy between Visteon and LTD. (Denton Dep. at 36).

**RESPONSE:**

### Katherine Fraiser

The following undisputed facts are material to Ms. Fraiser's claims:

64.     Ms. Fraiser is aware that co-employee Sherry Smith had complained to LTD Production Manager Doug Randolph about her attitude at work.  (Fraiser Dep. at 53).

**RESPONSE:**

65. Ms. Fraiser did not take any FMLA leave other than for her workers' compensation injury in 2007. (Fraiser Dep. at 68).

**RESPONSE:**

66. Ms. Fraiser was never disciplined for requesting FMLA leave. (Fraiser Dep. at 71).

**RESPONSE:**

67. Ms. Fraiser was never denied FMLA leave that she requested. (Fraiser Dep. at 71).

**RESPONSE:**

68. Nobody in LTD management told Ms. Fraiser that she was taking too much FMLA leave. (Fraiser Dep. at 72).

**RESPONSE:**

69. Nobody in LTD management told Ms. Fraiser that she was taking too much workers' compensation leave. (Fraiser Dep. at 72).

**RESPONSE:**

70. Ms. Fraiser did not have any discussions with LTD management about their attitude regarding FMLA leave. (Fraiser Dep. at 73).

**RESPONSE:**

71. Ms. Fraiser made a workers' compensation claim in August 2007 for an injury that occurred in November 2006. (Fraiser Dep. at 74).

**RESPONSE:**

72. Ms. Fraiser is not aware of any documents that connect her termination to her workers' compensation claim. (Fraiser Dep. at 77).

**RESPONSE:**

73. Nobody in LTD management has made statements connecting Ms. Fraiser's workers' compensation claim to her termination. (Fraiser Dep. at 77).

**RESPONSE:**

74. Ms. Fraiser has no knowledge of a conspiracy between Visteon and Centrum. (Fraiser Dep. at 120).

**RESPONSE:**

75. Ms. Fraiser has never heard any member of LTD management express hostility toward employees who took FMLA leave. (Fraiser Dep. at 122).

**RESPONSE:**

## **Wayne Jackson**

The following undisputed facts are material to Mr. Jacksons claims:

76. Mr. Jackson believes that his use of FMLA leave, his age, and the fact that he was the union president were factors in his termination. (Jackson Dep. at 45).

**RESPONSE:**

77. Mr. Jackson was the president of UAW local 3033, but prior to becoming president of the union he served as vice president of the union, and he was a union member ever since it was recognized at LTD. (Jackson Dep. at 71-72).

**RESPONSE:**

N BHB 736113 v1
2138171-000277 11/12/2009

78.     Mr. Jackson had problems with LTD managers George Evans and Doug Randolph.  (Jackson Dep. at 77).

**<u>RESPONSE:</u>**

79.     Mr. Jackson had problems with LTD managers Sherry Vinson and Terry Howard. (Jackson Dep. at 78).

**<u>RESPONSE:</u>**

80.     Mr. Jackson had a problem with "anyone in management." (Jackson Dep. at 78).

**<u>RESPONSE:</u>**

81.      Mr. Jackson does not believe he had a problem with LTD is management before he became an officer of the union.  (Jackson Dep. at 82).

**<u>RESPONSE:</u>**

82.     Mr. Jackson recalls a conversation in which Ms. Vinson told him that "if he ever went off by yelling and screaming at any employee, supervisor, manager, or myself [Sherry Vinson], he was going home, end of conversation." (Jackson Dep. at 117, Exb. 9).

**<u>RESPONSE:</u>**

83.     Mr. Jackson admits he had "heavy discussions" with LTD managers Doug Randolph and George Evans.  (Jackson Dep. at 119).

**<u>RESPONSE:</u>**

84.     Mr. Jackson admits that LTD managers Terry Howard and Sherry Vinson recommended his termination to Visteon in March 2006.  (Jackson Dep. at 153, Exb. 19).

**<u>RESPONSE:</u>**

85. Mr. Jackson has no reason to believe that Terry Howard was recommending his termination because of FMLA leave or any workers' compensation claim. (Jackson Dep., p 154-55).

**RESPONSE:**

86. Mr. Jackson believes that Terry Howard was recommending the termination of his employment in March 2006 because of his union activity. (Jackson Dep. at 155).

**RESPONSE:**

87. Mr. Jackson is not aware of LTD counting FMLA leave against any employee when disciplining the employee for absenteeism. (Jackson Dep. at 173-74).

**RESPONSE:**

88. Mr. Jackson has no knowledge of Ms. Vinson making any negative statements about employees taking FMLA leave. (Jackson Dep. at 176-77).

**RESPONSE:**

89. Nobody gave Mr. Jackson a hard time for taking time off for FMLA. (Jackson Dep. at 196).

**RESPONSE:**

90. Mr. Jackson believes that Ms. Vinson did her job in administering FMLA leave. (Jackson Dep. at 196).

**RESPONSE:**

91. Mr. Jackson agrees there is nothing wrong with a company examining the reasons why employees are taking FMLA leave. (Jackson Dep. at 200).

**RESPONSE:**

92.     Mr. Jackson agrees there is nothing wrong with a company keeping up with the amount of time its employees are taking for FMLA leave.  (Jackson Dep. at 201).

**RESPONSE:**

93.     Mr. Jackson is not aware of any documents that connect his FMLA leaves to his termination.  (Jackson Dep. at 234).

**RESPONSE:**

### Arnee Milton

The following undisputed facts are material to Mr. Milton's claims:

94.     Mr. Milton sold drugs to certain of his co-workers at the LTD plant.  (Milton Dep. at 58, 62).

**RESPONSE:**

95.     Mr. Milton snorted pain medication while working at the LTD plant.   (Milton Dep. at 63).

**RESPONSE:**

96.     Mr. Milton admits that one of his doctors opinioned that he was exhibiting "drug seeking behavior."  (Milton Dep. at 64).

**RESPONSE:**

97.     Mr. Milton received all of the FMLA leave he requested while working at the LTD plant.  (Milton Dep. at 70).

**RESPONSE:**

98.     Ms. Vinson never expressed a negative attitude in response to Mr. Milton's requests for FMLA leave.  (Milton Dep. at 70-71).

N BHB 736113 v1
2138171-000277 11/12/2009

**RESPONSE:**

99. Ms. Vinson never criticized Mr. Milton for taking FMLA leave. (Milton Dep. at 71).

**RESPONSE:**

100. No manager at the LTD plant ever expressed a negative attitude about Mr. Milton's requests for FMLA leave. (Milton Dep. at 71).

**RESPONSE:**

101. No manager at the LTD plant ever criticized Mr. Milton for taking FMLA leave. (Milton Dep. at 71).

**RESPONSE:**

102. Mr. Milton never received any disciplinary action for taking FMLA leave. (Milton Dep. at 71).

**RESPONSE:**

103. Mr. Milton was never denied FMLA leave when he qualified for it. (Milton Dep. at 71-72).

**RESPONSE:**

104. No one employed at the LTD plant has ever told Mr. Milton that he was terminated because of his FMLA leaves. (Milton Dep. at 72).

**RESPONSE:**

105. Mr. Milton has not seen any documents that serve as evidence that he was terminated for taking FMLA leave. (Milton Dep. at 72).

**RESPONSE:**

106. Mr. Milton is assuming that his FMLA leaves are the reason he was terminated. (Milton Dep. at 72-73).

**RESPONSE:**

## Dianne Sawyer

The following undisputed facts are material to Ms. Sawyer's claims:

107. Ms. Sawyer is not claiming that she was denied FMLA leave to which she was entitled. (Sawyer Dep. at 43).

**RESPONSE:**

108. Each time Ms. Sawyer submitted a complete FMLA certification, it was approved. (Sawyer Dep. at 47).

**RESPONSE:**

109. No manager at the LTD plant ever told Ms. Sawyer that she was taking too much FMLA leave. (Sawyer Dep. at 65).

**RESPONSE:**

110. Ms. Sawyer believes that she was terminated "because of the union statements and too much time off work." (Sawyer Dep. at 65).

**RESPONSE:**

111. Ms. Sawyer believes that LTD management weighted her union involvement and FMLA leave equally in its decision not to retain her. (Sawyer Dep. at 71).

**RESPONSE:**

112. Ms. Sawyer is not aware of any documents indicating that her FMLA leave is related to her termination. (Sawyer Dep. at 75).

**RESPONSE:**

113.    Ms. Sawyer is not aware of any statements by any LTD managers that would connect her FMLA leave to the decision to terminate her employment.  (Sawyer Dep. at 75).

**RESPONSE:**

114.    Ms. Sawyer is assuming that she was selected for termination because she "took a lot of FMLA leave."  (Sawyer Dep. at 77).

**RESPONSE:**

115.    Ms. Sawyer does not know why she was terminated and employees who took more FMLA leave than she did were retained.  (Sawyer Dep. at 80).

**RESPONSE:**

116.    Ms. Sawyer has no knowledge of a conspiracy between Visteon and Centrum.  (Sawyer Dep. at 99).

**RESPONSE:**

### Martha Ann Sullivan

The following undisputed facts are material to Ms. Sullivan's claims:

117.    Ms. Sullivan made one workers' compensation claim at LTD, which occurred in 2005.  (Sullivan Dep. at 84).

**RESPONSE:**

118.    Ms. Sullivan never got the impression from Ms. Vinson that her FMLA leaves were a problem.  (Sullivan Dep. at 88).

**RESPONSE:**

119.    Ms. Sullivan admits that on one occasion LTD manager Sherry Vinson told her that she needed to take FMLA leave.  (Sullivan Dep. at 88).

**RESPONSE:**

120.    Ms. Sullivan was never denied a request for FMLA leave.  (Sullivan Dep. at 90).

**RESPONSE:**

121.    Nobody at the LTD plant told Ms. Sullivan that she was taking too much FMLA leave.  (Sullivan Dep. at 90-91).

**RESPONSE:**

122.    Ms. Sullivan does not know why employees who used more FMLA than her in 2007 and 2008 were retained.  (Sullivan Dep. at 95-96).

**RESPONSE:**

123.    Ms. Sullivan's opinion on why she was terminated is based on assumption. (Sullivan Dep. at 100).

**RESPONSE:**


**Stacy Thorne**

The following undisputed facts are material to Mr. Thorne's claims:

124.    When Mr. Thorne reported his workers' compensation injury to LTD manager George Evans, Mr. Evans did not appear to have a problem with the workers' compensation injury and Mr. Evans arranged for Mr. Thorne's medical treatment for the injury.  (Thorne Dep. at 61).

**RESPONSE:**

125.     Mr. Thorne is not aware of any LTD manager expressing hostility toward workers' compensation generally.  (Thorne Dep. at 62).

**RESPONSE:**

126.     Mr. Thorne is not aware of any documents indicating that his workers' compensation claim was related to his termination.  (Thorne Dep. at 65).

**RESPONSE:**

127.     Mr. Thorne is not aware of any statements by LTD management that would connect his workers' compensation claim to the decision to terminate his employment. (Thorne Dep. at 65).

**RESPONSE:**

128.     When asked why individuals with workers' compensation claims were retained and he was terminated, Mr. Thorne responded "I have no idea." (Thorne Dep. at 66).

**RESPONSE:**

129.     Mr. Thorne is not aware of any documents indicating that his FMLA leave was related to his termination.  (Thorne Dep. at 75).

**RESPONSE:**

130.     Mr. Thorne is not aware of any statements by LTD management that would connect his FMLA leave to the decision to terminate his employment. (Thorne Dep. at 75).

**RESPONSE:**

131.     The only FMLA leave that Mr. Thorne ever took while working at the LTD plant was two days in November 2007.  (Thorne Dep. at 68).

**RESPONSE:**

N BHB 736113 v1
2138171-000277 11/12/2009

132.     When asked why individuals with more FMLA leave than Mr. Thorne were retained and he was terminated, Mr. Thorne responded "I have no clue why." (Thorne Dep. at 66).

**RESPONSE:**

133.     Mr. Thorne never made a request for FMLA leave that was denied by LTD. (Thorne Dep. at 74).

**RESPONSE:**

134.     Mr. Thorne has no knowledge of a conspiracy between Visteon and Centrum. (Thorne Dep. at 80).

**RESPONSE:**

### Barbara Wilson

The following undisputed facts are material to Ms. Wilson's claims:

135.     Barbara Wilson thinks that LTD manager Sherry Vinson "does a great job" at LTD working with "FMLA and insurance stuff." (Wilson Dep. at 16).

**RESPONSE:**

136.     Ms. Wilson believes that LTD manager Sherry Vinson is a good person, and she has no reason to believe that Sherry Vinson is untruthful. (Wilson Dep. at 17).

**RESPONSE:**

137.     Ms. Wilson believes that LTD manager Terry Howard is a good person, and she has no reason to believe that Terry Howard is untruthful. (Wilson Dep. at 17).

**RESPONSE:**

N BHB 736113 v1
2138171-000277 11/12/2009

138.    Ms. Wilson does not believe a workers' compensation injury was a reason that she was terminated, and she is not making a workers' compensation retaliation claim in this lawsuit. (Wilson Dep. at 26)

**RESPONSE:**

139.    Ms. Wilson heard that Arnee Milton was addicted to pain killers and that he used drugs while at work at the LTD plant.  (Wilson Dep. at 38-39).

**RESPONSE:**

140.    Ms. Wilson was never denied FMLA leave when she request it.  (Wilson Dep. at 56).

**RESPONSE:**

141.    Ms. Wilson never heard any supervisor at LTD make any comment that was negative about employees using FMLA leave.  (Wilson Dep. at 56).

**RESPONSE:**

142.    Ms. Wilson never heard LTD managers Sherry Vinson or Terry Howard make any comments that were hostile about employees taking FMLA leave.  (Wilson Dep. at 56).

**RESPONSE:**

143.    Nobody at the LTD plant gave Ms. Wilson a hard time for taking FMLA leave. (Wilson Dep. 56).

**RESPONSE:**

144.    Ms. Wilson does not know why she was terminated.  (Wilson Dep. at 57).

**RESPONSE:**

N BHB 736113 v1
2138171-000277 11/12/2009

145.    Ms. Wilson admits that her allegation that her termination was related to FMLA leave is an assumption.  (Wilson Dep. at 57).

**RESPONSE:**

146.    Ms. Wilson never received any disciplinary action for taking FMLA leave. (Wilson Dep. 57).

**RESPONSE:**

147.    Nobody at LTD ever told Ms. Wilson that she was taking too much FMLA leave. (Wilson Dep., p 57).

**RESPONSE:**

**<u>San Young</u>**

The following undisputed facts are material to Ms. Young's claims:

148.    Ms. Young believes that the union at the LTD plant defended lazy people. (Young Dep. at 30).

**RESPONSE:**

149.    Ms. Young filed an unfair labor practice charge with the National Labor Relations Board.  (Young Dep. at 36, Exb. 3).

**RESPONSE:**

150.    Ms. Young never had any conversations with LTD managers in which they were critical or hostile about workers' compensation claims.  (Young Dep. at 55).

**RESPONSE:**

151.    Nobody in LTD management ever told Ms. Young that she was taking too much workers' comp leave.  (Young Dep. at 55).

N BHB 736113 v1
2138171-000277 11/12/2009

**RESPONSE:**

152.    Nobody at LTD ever told Ms. Wilson that she was taking too much FMLA leave. (Wilson Dep. at 57).

**RESPONSE:**

153.    Ms. Young is not aware of any documents that would connect her workers' compensation claim with her termination. (Young Dep. at56).

**RESPONSE:**

154.    Ms. Young did not file her workers' compensation claim until after she was terminated. (Evans Dep. at 43; Randolph Dep. at 62; Vinson Dep. at 138; Vinson 30(b)(6) Dep. at 119-21).

**RESPONSE:**

155.    Ms. Young has not had any conversations with anyone in LTD management that would lead her to believe her termination was connected to her workers' compensation claims. (Young Dep. at 56-57).

**RESPONSE:**

156.    Ms. Young has no explanation as to why other employees with workers' compensation claims were retained by LTD when she was terminated. (Young Dep. at 58).

**RESPONSE:**

157.    Nobody in LTD management indicated to Ms. Young that they were unhappy with her workers' compensation claim. (Young Dep. 61-62).

**RESPONSE:**

N BHB 736113 v1
2138171-000277 11/12/2009

158.    Ms. Young was never disciplined for filing a workers' compensation claim. (Young Dep. at 62).

**RESPONSE:**

159.    Ms. Young is not aware of any documents linking her termination to her workers' compensation claim.  (Young Dep. at 62).

**RESPONSE:**

160.    Ms. Young's belief that her workers' compensation claim is related to her termination is an assumption.  (Young Dep. 64).

**RESPONSE:**

161.    Ms. Young was never denied FMLA leave while working at the LTD plant. (Young Dep. at 61).

**RESPONSE:**

162.    Ms. Young received all of the FMLA leave that she requested while employed at the LTD plant.  (Young Dep. at 61).

**RESPONSE:**

163.    Nobody in management at the LTD plant did anything to lead Ms. Young to believe that they were upset with her use of FMLA leave.  (Young Dep. at 62).

**RESPONSE:**

164.    Ms. Young was never disciplined for requesting FMLA leave while working at the LTD plant.  (Young Dep. at 62).

**RESPONSE:**

N BHB 736113 v1
2138171-000277 11/12/2009

165.    Ms. Young is not aware of any documents linking her termination to her use of FMLA leave.  (Young Dep. at 62).

**RESPONSE:**

166.    Ms. Young's belief that her FMLA leave is related to her termination is an assumption that is not based on any personal knowledge.  (Young Dep. at 64).

**RESPONSE:**

167.    Ms. Young is not aware of any evidence of conspiracy between Visteon and Centrum.  (Young Dep. at 82).

**RESPONSE:**

<div style="margin-left:auto">

Respectfully submitted,

/s Kenneth A. Weber_____
Kenneth A. Weber (#15730)
Emily H. Plotkin (#22978)
Ben Bodzy (#23517)
BAKER, DONELSON, BEARMAN
  CALDWELL & BERKOWITZ, P.C.
211 Commerce Street, Suite 1000
Nashville, TN  37201
(615) 726-5600 Telephone
(615) 726-0464 Facsimile

Attorneys for Defendants

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 12, 2009, a copy of Defendants' Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment was filed electronically. Parties may access this filing through the Court's electronic filing system.

Jonathan Young
Cameron & Young
100 South Jefferson Avenue
Cookeville, Tennessee 38501

Kenneth S. Williams
Cynthia A. Wilson
Madewell, Jared, Halfacre,Williams & Wilson
230 North Washington Avenue
Cookeville, Tennessee 38501

<div align="right">

s/Kenneth A. Weber
Kenneth A. Weber

</div>

N BHB 736113 v1
2138171-000277 11/12/2009